**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| MOLYCORP, INC., *et al.*, | Bankr. Case No. 15-11357-CSS |
| Debtors. | |
| OCM MLYCO CTB LTD., | |
| Appellant, | |
| v. | Civil Action No. 16-286-GMS<br>BAP 16-20 |
| AD HOC 10% NOTEHOLDERS, | |
| Appellee. | |
| In re | Chapter 11 |
| MOLYCORP MINERALS, *et al.*, | Bankr. Case No. 15-11371-CSS |
| Debtors. | |
| OCM MLYCO CTB LTD., | |
| Appellant, | |
| v. | Civil Action No. 16-288-GMS<br>BAP 16-21 |
| AD HOC 10% NOTEHOLDERS, | |
| Appellee. | |

**_EMERGENCY_ MOTION OF APPELLANT FOR STAY PENDING APPEAL**

Appellant seeks an emergency stay pending appeal to preserve the status quo and prevent further derogation of its rights in Secured Natural Resources ("SNR"). The issue in this appeal is whether the Bankruptcy Court erred as a matter of law when it allowed Appellee to arrogate for itself all corporate governance of SNR and deprive Appellant of corporate governance rights in contravention to the settlement agreement between Appellant and Appellee. Notwithstanding Appellee's assurances that, pending appeal, it would not take corporate action at SNR that would impact Appellant's interests, Appellee has recently caused SNR to commence a capital raise by a $6 million rights offering. If the rights offering proceeds, Appellant's 35% ownership stake in SNR will be severely diluted to just 5.8%. Appellant therefore seeks to stay the rights offering and maintain the status quo of SNR's corporate governance until this appeal is resolved.

Granting a stay is necessary and appropriate under the circumstances. It is customary for Delaware courts to enter a status quo order while a corporate governance dispute plays out in court. A status quo order is especially appropriate here as SNR has no operations and no immediate need for capital. Moreover, as described in more detail below, all four factors courts consider for a stay pending appeal strongly favor granting a stay.

**Background**. The Appellant is OCM MLYCo CTB Ltd. ("Oaktree"). Appellee is an ad hoc group (the "Ad Hoc Group") of noteholders (the "10% Noteholders"). Prior to the commencement of the chapter 11 cases ("Chapter 11 Cases"), Oaktree and the 10% Noteholders lent money to Molycorp, Inc. (together with its affiliated debtors and debtors in possession in the above-captioned cases, the "Debtors"). Oaktree and the 10% Noteholders held *pari passu* collateral rights in the assets of the Debtors' Mountain Pass, CA mining business (the "Mountain Pass Assets"). Oaktree's and the 10% Noteholders' collateral rights in the Mountain Pass Assets are governed by a prepetition collateral agency agreement (the "CAA").

The CAA states that each of Oaktree and the 10% Noteholders "acknowledges and agrees that the payment and satisfaction of all of the Secured Obligations will be secured *equally and ratably* . . . ." CAA § 3(c)(iii) (emphasis added). The CAA further provides that "all moneys or other property held by the Collateral Agent . . . shall, to the extent available for distribution, be

distributed . . . ***equally and ratably.***" *Id.* § 4(d) (emphasis added).

The Chapter 11 Cases were heavily disputed, but after months of mediation, a global deal was reached. As part of the deal, Oaktree and the 10% Noteholders would "credit bid" a *pro rata* portion of their claims for some of the Mountain Pass Assets (the mineral rights and certain intellectual property), with equity in the acquisition vehicle, SNR, distributed in proportion to their claims. Definitive documentation, including the governance documents for SNR, had to be "reasonably acceptable" to Oaktree, defined as "in form and substance consistent with," among other documents, the CAA. *See* Settlement Agm't ¶ 3. Thus, to be consistent with the terms of the CAA and therefore the Settlement Agreement, the equity in SNR (the proceeds of their shared collateral) must be distributed ***equally and ratably*** among all 10% Noteholders and Oaktree.

Ignoring this requirement, the Ad Hoc Group drafted an LLC agreement for SNR that vested members of the Ad Hoc Group with *all* of the significant corporate governance of SNR, and stripped Oaktree of any meaningful voting power, even though Oaktree is the single largest owner of SNR at 35% (roughly the same amount as all of the members of the Ad Hoc Group combined).[1] Oaktree refused to accept these unequal terms and brought the matter to the Bankruptcy Court. The Bankruptcy Court ruled from the bench that the LLC agreement was not inconsistent with the terms of the Settlement Agreement and the CAA.[2] The Bankruptcy Court found that the CAA term "equally and ratably" does not apply to corporate governance rights, but, instead, is "focused on the distribution of the membership interest to make sure that they fairly and accurately reflect the agreement under the [CAA] as to who [gets] what percentage."[3]

Oaktree appealed. At the teleconference before Judge Thynge on June 7 [D.I. 9 & 10], Oaktree expressed concern that the Ad Hoc Group may take corporate action that could negatively impact Oaktree before the appeal's resolution. In response to these concerns, counsel for the Ad Hoc Group assured Judge Thynge that no such action would be taken.

Notwithstanding counsel's assurance, Oaktree recently learned that the board of

---

[1]  The LLC agreement also eliminated all customary minority equity protections.
[2]  Hearing Tr., Apr. 20, 2016.
[3]  *Id.* at 31:25–32:4.

managers of SNR made the decision, without any vote of its equity, to commence a rights offering (the "Rights Offering").[4] The Rights Offering effectively forces Oaktree to pay SNR $2.1 million to retain its 35% stake in SNR or be diluted to a 5.8% stake. **The return date on the Rights Offering is August 23 at 5 p.m.** Oaktree only received the solicitation materials on August 11. The Offering Memorandum does not explain the need for the dilutive capital raise or the truncated timeline. Indeed, the Offering Memorandum makes clear SNR has no need for capital, other than to satisfy its obligations under a management agreement with one of the members of the Ad Hoc Group. The Rights Offering, if completed, will undermine the appeal and negatively impact Oaktree's rights both with respect to the appeal and with respect to SNR by potentially irreparably diluting Oaktree's rights.

**Argument.** Oaktree requests that the Court stay the Ad Hoc Group and its members from taking any direct or indirect action affecting the corporate governance or ownership of SNR, including, without limitation, the Rights Offering, pending the outcome of the appeal. A stay pending appeal is warranted to maintain the status quo while the important corporate governance issues in this appeal are resolved on the merits. Indeed, the Delaware Court of Chancery has recognized "it has become customary in [corporate control actions] to put into place, either by agreement of the parties or court order, a status quo arrangement that precludes the directors presently in control of the corporation from engaging in transactions outside the ordinary course of the corporation's business until the control issue is resolved."[5]

Maintaining the status quo is also justified under the standards for a stay pending appeal. The Court may "stay the effect of a bankruptcy court order pending a resolution on appeal"[6] so

---

[4]  The terms of the Rights Offering are set forth in the Confidential Offering Memorandum, dated August 2, 2016 for Secured Natural Resources, LLC (the "Offering Memorandum"). Attached as **Exhibit 1** is a copy of the Offering Memorandum obtained from the publicly available website at http://dm.epiq11.com/SNR/Document (last accessed Aug. 22, 2016). Oaktree believes these materials are substantially the same as those sent to Oaktree.

[5]  *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at *2 (Del. Ch. Nov. 7, 2013) (citation omitted); *Pharmalytica Servs., LLC v. Agno Pharm., LLC*, 2008 WL 2721742, at *3 n.6 (Del. Ch. July 9, 2008) ("Similarly, status quo orders may be utilized in actions brought under Section 18-110 of the Limited Liability Company Act."); *Capital Link Fund I, LLC v. Capital Point Mgmt., LP*, 2015 WL 7731766, at *3 (Del. Ch. Nov. 25, 2015) ("Courts generally implement status quo orders . . . to maintain stability during contests for corporate office . . . While the parties here contest control of assets . . ., the same rationales apply . . . .")

[6]  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015); *see also* Fed. R. Bankr. P. 8007.

as to "maintain the status quo."[7] The court should weigh whether (1) the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; and (3) issuance of the stay will substantially injure the other parties interested in the proceeding.[8] The court may also consider where the public interest lies.[9]

The four factors strongly support a stay. First, Oaktree is likely to succeed on the merits because the Bankruptcy Court erred as matter of law, which is subject to de novo review, in allowing the Ad Hoc Group to disenfranchise Oaktree and distribute governance rights unequally in clear violation of the parties' agreements. A strong showing of likely success "exists if there is a reasonable chance, or probability, of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not."[10] At a minimum, Oaktree has a substantial case that the Bankruptcy Court erred as a matter of law when it failed to require equal governance rights in SNR. [11]

The Bankruptcy Court incorrectly held that Oaktree's right to receive its "equal and ratable" share of the proceeds of the collateral subject to the credit bid was satisfied by providing Oaktree equity in SNR with unequal and inferior governance rights versus SNR equity given to members of the Ad Hoc Group. The Bankruptcy Court's ruling contradicts basic principles of contract interpretation and cannot be accepted.[12] Accepting that "equal and ratable" only applies to "who gets what percentage" renders the term "equal" superfluous and inoperative.[13] Such an interpretation is unsupportable.[14]

Moreover, the law recognizes that shares with voting and control rights have greater

---

[7] *See KOS Pharm., Inc. v. Andrix Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

[8] *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

[9] *See id.*

[10] *Revel*, 802 F.3d at 568–69 (internal citations and quotations omitted).

[11] *See Morgan v. Polaroid Corp. (In re Polaroid Corp.)* 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004).

[12] Under New York law, which governs the Collateral Agency Agreement, where a contract is "complete, clear and unambiguous on its face," the contract "must be enforced according to the plain meaning of its terms." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004).

[13] New York courts disfavor interpretations of contracts which leave any portion of a contract superfluous or inoperative. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002).

[14] Where a proposed interpretation would render a contract term meaningless, it is "unsupportable under standard principles of contract interpretation." *Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Tr. Co.*, 727 N.E.2d 563, 566–67 (N.Y. 2000).

value and different status than the shares without, and therefore by definition are not "equal."[15] Because Oaktree is denied all meaningful governance rights, while the members of the Ad Hoc Group can control SNR's Board in perpetuity, Oaktree's equity in SNR is not "equal."

Second, absent a stay, Oaktree will suffer irreparable harm. Courts have recognized that "severe dilution" may be irreparable harm supporting a stay.[16] If a stay is not granted, Oaktree's equity will be diluted from 35% to 5.8%. This is severe dilution and therefore irreparable harm. The Rights Offering may also irreparably deprive Oaktree of the rights it should have received under the LLC agreement, including the right to vote to elect SNR's board of managers, the right to vote on material corporate actions, and the right to protect SNR from predatory affiliate transactions. Third, there is no evidence that granting a stay will harm the Ad Hoc Group, SNR or any other party in interest. SNR owns non-functioning mineral rights and has no working capital or capital expenditure needs to necessitate the Rights Offering or other governance maneuvers. Fourth, the public interest strongly supports granting a stay to maintain the status quo in this corporate governance dispute. As discussed above, implementing the stay requested here is consistent with the use of status quo orders in corporate governance disputes and the underlying public policy of maintaining the status quo until resolved on the merits.

---

[15] "[V]oting shares have intrinsically greater value than non-voting stock, due to the voting rights attached to ownership of such shares and the corresponding opportunity to effect and/or direct changes in the [c]ompany." *Johnson v. Gibbs Wire & Steel Co.*, 2011 WL 2536480, at *7 (Conn. Super. Ct. May 31, 2011) (*unpublished*) (discussing how to appropriately value the non-voting shares in a closely held company); *see also Wallace v. United States*, 566 F. Supp. 904, 917 (D. Mass. 1981) (accepting appraisal of voting shares at a 5% premium over non-voting shares); *Okerlund v. United States*, 53 Fed. Cl. 341, 355 (2002), *aff'd*, 365 F.3d 1044 (Fed. Cir. 2004) (accepting expert testimony that a 5% discount for lack of voting rights [in a closely held company] was justified).

[16] *See, e.g., Flight Options Int'l, Inc. v. Flight Options, LLC*, 2005 WL 5756537, at *10 (Del. Ch. July 11, 2005) ("A severe dilution has been found to constitute irreparable harm because, at least in part, of the difficulties in restoring the injured party to its proper status through a grant of final relief."); *Suchodolski Associates, Inc. v. Cardell Fin. Corp.*, 2003 WL 22909149, at *4 (S.D.N.Y. Dec. 10, 2003) ("The dilution of a party's stake in, or a party's loss of control of, a business constitutes irreparable harm.").

Dated:  August 22, 2016
       Wilmington, DE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Matthew B. Harvey*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew B. Harvey (No. 5186)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
rdehney@mnat.com
gwerkheiser@mnat.com
aremming@mnat.com

     -and-

MILBANK, TWEED, HADLEY & McCLOY LLP

Dennis F. Dunne
Samuel A. Khalil
Lauren C. Doyle
28 Liberty Street
New York, NY 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
ddunne@milbank.com
skhalil@milbank.com
ldoyle@milbank.com

Andrew M. Leblanc
Aaron L. Renenger
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone:  (202) 835-7500
Facsimile:  (202) 263-7586
aleblanc@milbank.com
arenenger@milbank.com

*Counsel for OCM MLYCo CTB Ltd.*